IN THE UNITED STATES DISCTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| OSCAR HAWAII<br>3240 WEST BOULEVARD<br>CLEVELAND, OHIO 44111 | )<br>)<br>) | CASE NO. **1:09CV0527**<br><br>JUDGE: **JUDGE GWIN** |
| Plaintiff | ) | |
| v. | ) | |
| CAROL POPP<br>4423 COE AVENUE<br>NORTH OLMSTED, OHIO 44070 | )<br>)<br>) | |
| and | ) | |
| GEORGE CSATARY<br>2706 LORAIN ROAD<br>CLEVELAND, OHIO 44113 | )<br>)<br>) | |
| and | ) | **MAG. JUDGE McHARGH** |
| KAMEL ABDALLAH<br>14255 US HIGHWAY 1<br>SUITE 2180<br>JUNO BEACH, FLORIDA 33408 | )<br>)<br>)<br>) | |
| and | ) | |
| CURTIS PREE<br>14255 US HIGHWAY 1<br>SUITE 2180<br>JUNO BEACH, FLORIDA 33408 | )<br>)<br>)<br>) | |
| and | ) | |
| UNIVERSAL PROPERTY<br>DEVELOPMENT & ACQUISITION<br>CORP.<br>14255 US HIGHWAY 1<br>SUITE 2180<br>JUNO BEACH, FLORIDA 33408 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | **COMPLAINT** |

oOo

1

## JURISDICTION AND VENUE

1. This is an action in law and equity seeking compensatory and punitive damages and injunctive relief. Jurisdiction is premised upon Section 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. Sec. 78j(b) and 78t(a) and Rule 10b-5. Additionally, causes of action arise under U.S.C. Sec. 77(e), (h), and (j) pertaining to the sale of unregistered securities without a prospectus or registration statement. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1337 and Section 27 of the Act, 15 U.S.C. Sec. 78aa.

2. Venue is proper in this Court pursuant to Section 27 of the Act and 28 U.S.C. Sec. 1391(b). The acts complained of herein occurred in substantial part in Cleveland, Ohio. In furtherance of the acts alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce including but not limited to the U.S. mail. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

## THE PARTIES

3. Plaintiff Oscar Hawaii ("Plaintiff" or "Hawaii") is, and at all relevant times was, a resident of the State of Ohio. Hawaii is currently 75 years old.

4. Defendant Carol Popp ("Popp") is, and at all relevant times was, a resident of the State of Ohio.

5. Defendant George Csatary ("Csatary") is, and at all relevant times was, a resident of the State of Ohio. Csatary formerly served as the Chief Financial Officer and a Director of ProCore Group, Inc., now known as Universal Property Development & Acquisition Corp. Csatary is also a Certified Public Account licensed to practice in the State of Ohio.

6. Defendant Kamel Abdallah ("Abdallah") is, and at all relevant times was, a resident

of the State of Florida. Abdallah formerly served as the President, Chief Executive Officer and a Director of Procore Group, Inc., known as Universal Property Development & Acquisition Corp.

7. Defendant Curtiss Pree ("Pree") is, and at all relevant times was, a resident of the State of Maryland. Pree formerly served as the President, Chief Executive Officer and a Director of Procore Group, Inc., known as Universal Property Development & Acquisition Corp.

8. Universal Property Development & Acquisition Corp., formerly known as ProCore Group, Inc. ("UPDA") is and at all relevant times was a California Corporation licensed to do business in the State of Florida with its principal place of business at 14255 US Highway 1, Suite 2180, Juno Beach, Florida.

## FACTUAL BACKGROUND

9. Prior to 2004, Plaintiff Hawaii met and became friends with Popp through their mutual attendance at the Hungarian Reform Church. Because of the similarity of their ethnic background and shared faith, Hawaii trusted Popp.

10. On or about August 27, 2004, after a church service, Popp approached Hawaii and requested a Thirty Thousand Dollar ($30,000.00) loan. Popp explained that he had an opportunity to invest in company that he thought was very promising. Because of his faith and trust in Popp, Hawaii made the requested loan.

11. Thereafter, on or about January 12, 2005, Popp again approached Hawaii and stated that he had a great investment opportunity for him. Popp advised Hawaii that he could make a huge profit if he invested in the venture that Popp was promoting.

12. Hawaii advised Popp that he had no knowledge about stock investments and relied upon Charles Schwab for investment advice and money management. Popp represented to Hawaii that he could become a millionaire by investing in the venture Popp was promoting.

3

13. On or about January 14, 2005 Popp invited Hawaii to attend a meeting in a downtown Cleveland hotel. Popp stated that he wanted to introduce Hawaii to Csatary, the Chief Executive Officer for a company called Procore Group, Inc. and another individual named Marcus Duke ("Duke"). Hawaii agreed to accompany Popp to the meeting.

14. During the ensuing meeting Hawaii met Csatary and Duke who, along with Popp, represented that Procore was an exceptional investment opportunity. Csatary explained that Procore was involved in a large real estate investment and global financing in China. Csatary, Duke and Popp told Hawaii that he had an opportunity to invest at the right time because Procore's stock was substantially undervalued and would appreciate substantially in the near future because of a series of acquisitions the company was in the process of completing

15. Csatary told Hawaii that Procore required an investment of One Hundred Thousand Dollars ($100,000.00) to pay certain tax obligations and complete the acquisitions that would cause Procare's stock to skyrocket in price. Csatary represented that if Hawaii made the required investment in Procore he would be a millionaire within two (2) years.

16. Csatary and Popp's knew that their representations were false when made. Notwithstanding that fact Csatary and Popp made their false and fraudulent representations with the intention of inducing Hawaii to invest in Procore.

17. Neither Csatary nor Popp gave Hawaii a prospectus or any other financial information regarding Procore. Likewise, neither Csatary nor Popp advised Hawaii that there was any substantial risk in making an investment in Procore.

18. On January 24, 2005 Popp drove Hawaii to Csatary's office to further discuss an investment in Procore. Csatary told Hawaii that if he made an immediate investment of One Hundred Thousand Dollars ($100,000.00) Procore would issue him stock at a very low and

favorable price. Hawaii advised Csatary that the only money that was available to him was in a Schwab IRA retirement account.

19. Csatary advised Hawaii that he was a Certified Public Accountant and could arrange the transfer of One Hundred Thousand Dollars ($100,000.00) from his Schwab account to Procore. Csatary pressured Hawaii to make the investment stating that it was essential that the transaction be immediately completed. Csatary failed to apprise Hawaii of the tax consequences that would ensue as a result of his withdrawal of the requested funds from his IRA.

20. Hawaii was confused and scared but felt that Popp and Csatary who shared his Hungarian background and religious beliefs would not mislead him. In reliance upon the representations of Popp and Csatary he agreed to invest One Hundred Thousand Dollars ($100,000.00) in Procore.

21. Csatary prepared the wire transfer from Hawaii's Schwab account to Procore's Huntington Bank account in Detroit, Michigan. After the wire transfer was executed Csatary gave Hawaii a number of documents regarding Procore which he was directed to sign. Hawaii was not given an opportunity to read the documents but was told they needed to be signed in order for him to receive his stock. Although the documents were signed on January 24, 2005, Csatary falsified them by backdating the documents to January 12, 2005.

22. Subsequent to January 24, 2005 Hawaii did not receive any stock certificates from Procore, Csatary or Popp. Consequently, he attempted to call Csatary and Popp to determine when he would receive his stock and the status of his investment. Neither Csatary nor Popp returned Hawaii's calls.

23. On March 3, 2005, Abdallah became President, Chief Executive Officer and Chairman of the Board Of Directors of Procore. At or about the same time, Pree became

Procore's Chief Financial Officer, Secretary and a member of the Board of Directors. Csatary remained a corporate officer and member of the Board of Directors.

24. When Hawaii learned that Abdallah and Pree were in charge of Procore he contacted them to inquire why he had not yet received the stock certificates he had been promised. Abdallah and Pree represented that Procore was a financially stable company which was involved in various business transactions which when completed would result in significant profits for shareholders.

25. Abdallah and Pree knew their representations were false when made. Notwithstanding that fact Abdallah and Pree made their false and fraudulent representations to cover Csatary and Popp's misrepresentations and fraud to induce Hawaii to forebear from demanding return of his investment.

26. During March 2005 Hawaii became increasingly concerned about the fact that he had received little or no information about Procore and had not received any stock certificates evidencing his investment. Accordingly, Hawaii engaged an attorney to assist him in obtaining the return of his money.

27. On March 17, 2005 Hawaii's counsel made demand that Procore return the One Hundred Thousand Dollars ($100,000.00) it had obtained from Hawaii under false pretenses and in violation of the Act.

28. In response to the demand of Hawaii's counsel, on or about March 19, 2005, Procore, through Csatary, Abdallah, Pree and Popp delivered 3,333,333 shares of Procore stock to Hawaii. The stock delivered was restricted, unregistered shares that were subject to Rule 144 of the Act. Procore represented that the number of shares delivered to Hawaii was determined at a price established in a Private Placement Memorandum ("PPM") previously registered with the

6

Securities And Exchange Commission (the "SEC"). Procore further represented that the average price per share (approximately $ .03) was well below market value. A copy of the Share Certificate delivered to Hawaii is attached hereto as Exhibit "A." Despite repeated requests, the PPM was never provided to Hawaii for review.

29. At the time they pressured Hawaii to invest, Procore, Abdallah, Pree, Csatary and Popp failed to disclose that:

    a. Procore was a developmental company with no sales;

    b. The shares being sold were not registered and could not be sold in a public market for at least two (2) years and then only on a limited basis;

    c. Procore had a net operating loss of $17,036,000 with administrative expenses that had increased by 90% over the previous year;

    d. There was little or no interest in Procore and most sales made were by market makers or insiders;

    e. Procore intended to use Hawaii's investment not to close transactions or pay taxes as represented but for a promotional party to be held at the Super Bowl in Jacksonville, Florida; and

30. The Stock Certificates issued to Hawaii on March 24, 2005 were signed by Bashiruddin Usama as President and Charles Harper as Treasurer of Procore. Neither individual held those positions on the date the Stock Certificate was issued.

31. On May 8, 2005, Procore filed a 10KSB/A Quarterly Report with the SEC. In that report, Procore represented that Usama had been removed as President of the company on December 31, 2004, nearly four (4) months prior to the issuance of Hawaii's stock certificates which he had purportedly signed. A copy of the filing is attached hereto as Exhibit "B."

7

32. The stock issued to Hawaii on March 24, 2005 is worthless and was issued by Procore with the intent to mislead Hawaii into believing that there was value to the investment.

33. Both before and after the issuance of the worthless Stock Certificates Procore and its officers and directors continued to perpetrate their fraud upon Hawaii and other investors by making false SEC filings. For example, in a March 2005 10KSB filing Procore represented that it had realized a gain from the sale of land and property in Chiefland, Florida. There was no legitimate sale and the claim was false and fraudulent. On May 23, 2005, Procore filed a Form 10QSB with the SEC which failed to identify Hawaii as a holder of unregistered securities or as a creditor of the company.

34. Since 2005 Hawaii, through counsel, has made demand upon Procore and the individually named Defendants to allow him to inspect the books and records of the Company. Procore has steadfastly refused to permit such inspection.

## COUNT ONE: SECURITIES FRAUD

35. Plaintiff repeats and realleges as if fully rewritten herein, each and every allegation contained in Paragraphs 1 through 34 of this Complaint.

36. Defendants' actions, as more fully detailed in Paragraphs 9 through 34 of this Complaint constitute securities fraud under the Act and the laws of the State of Ohio. Specifically, Defendants failure to provide a prospectus or other investment offering information, issuance of SEC filings containing false and misleading information, delivery of worthless and fraudulent stock certificates and other legal documents, misrepresentations regarding the financial position and potential of the Company and misrepresentation of the use to which Hawaii's funds were to be put are violations of the Act and the laws of the State of Ohio.

37. As a direct and proximate consequence of Defendants' securities fraud Plaintiff has been damaged in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00).

## COUNT TWO: BREACH OF FIDUCIARY DUTY

38. Plaintiff repeats and realleges as if fully rewritten herein, each and every allegation contained in Paragraphs 1 through 37 of this Complaint.

39. Plaintiff is a minority shareholder of Defendant USPD. As such, Defendants owed him the duty of utmost loyalty and fair dealing.

40. Defendants have breached their fiduciary duty to Plaintiff by, among other things, making false and misleading statements to him concerning his investment, failing and refusing to provide him access to the company's books and records, and, upon information and belief, converting company property to their own use.

41. As a direct and proximate consequence of Defendants' breach of fiduciary duty Plaintiff has been damaged in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00).

## COUNT THREE: NEGLIGENCE

42. Plaintiff repeats and realleges as if fully rewritten herein, each and every allegation contained in Paragraphs 1 through 41 of this Complaint.

43. Defendants, in their dealings with Plaintiff, as more fully set forth in Paragraphs 9 through 34 of this Complaint, failed to meet the standard of care that reasonable and prudent business people would have met under the same or similar circumstances.

44. Defendants failure to meet the applicable standard of care is negligence.

45. As a direct and proximate consequence of Defendants' negligence Plaintiff has been damaged in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00).

## COUNT FOUR: FRAUD

46. Plaintiff repeats and realleges as if fully rewritten herein, each and every allegation contained in Paragraphs 1 through 45 of this Complaint.

47. Defendants represented to Plaintiff that the money he was to invest would be used to close existing business deals and to pay tax obligations. At the time Defendants' made that representation it was false and such representation was made willfully, wantonly, intentionally and with conscious disregard for Plaintiff's rights to induce him to invest money in Procore that was used to host a Super Bowl party or for other purposes not contemplated by the parties.

48. Defendants conduct was fraud

49. As a direct and proximate consequence of Defendants' fraud Plaintiff has been damaged in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00).

## COUNT FIVE: BREACH OF CONTRACT

50. Plaintiff repeats and realleges as if fully rewritten herein, each and every allegation contained in Paragraphs 1 through 49 of this Complaint.

51. Defendants induced Plaintiff to invest money in USPD and agreed that the funds invested would be used to pay tax obligations and to close real estate transactions.

52. Plaintiff invested his funds on the basis that Defendants would use them as they had represented.

53. Defendants failed to use Plaintiffs funds for the purposes for which they were intended and in the manner they had represented.

54. Defendants' conduct constitutes a breach of their contract with Plaintiff.

55. As a direct and proximate consequence of Defendants' breach of contract Plaintiff has been damaged in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

> A. With respect to Count One of this Complaint, compensatory damages in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00) and statutory damages as provided in the Act; and
>
> B. With respect to Count Two of this Complaint, compensatory damages in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00) and punitive damages in the amount of One Million Dollars ($1,000,000.00); and
>
> C. With respect to Count Three of this Complaint, compensatory damages in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00) and statutory damages as provided in the Act; and
>
> D. With respect to Count Four of this Complaint, compensatory damages in an amount to be determined at trial but expected to be in excess of One

Hundred Thousand Dollars ($100,000.00) and punitive damages in the amount of One Million Dollars ($1,000,000.00); and

E. With respect to Count Five of this Complaint, compensatory damages in an amount to be determined at trial but expected to be in excess of One Hundred Thousand Dollars ($100,000.00); and

F. An Order of this Court directing Defendants to permit Plaintiff to inspect the books and records of UPDA and its predecessor Procore; and

G. Plaintiff's reasonable attorney fees and the costs of this action; and

H. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Fred N. Carmen
_____
Fred N. Carmen (0014774)
27800 Cedar Road
Beachwood, Ohio 44122
(216) 831-1400/ (216) 831-0775 (fax)
Email: fnncarm@aol.com
Attorney for Plaintiff